# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JIMMY UPTON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-10-538-W ) |
| MICHAEL J. ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) |
| Defendant. | ) ) |

## **REPORT AND RECOMMENDATION**

Plaintiff, Jimmy Upton, seeks judicial review of a denial of supplemental security income benefits (SSI) by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below it is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## **I.   Procedural Background**

Mr. Upton's alleged disability onset date is August 29, 2007. *See* Administrative Record [Doc. #10] (AR) at 9.[1] The Social Security Administration denied his SSI application initially and on reconsideration. AR 40-43, 47-49. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. AR 9-18. The Appeals Council denied Mr. Upton's request for review. AR 2-4. This appeal followed.

---

[1] At the administrative hearing, Mr. Upton's attorney amended the onset date from December 31, 2005, to August 29, 2007. AR 9, 22-23.

## II.     The ALJ's Decision

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, she determined that Mr. Upton had not engaged in substantial gainful activity since August 29, 2007, the amended onset date. AR 11. At step two, the ALJ determined that Mr. Upton has the following severe impairments: "depression, anxiety, and substance abuse." AR 11. At step three, the ALJ found that Mr. Upton's impairments meet Listings 12.04, 12.08 and 12.09, 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 12. The ALJ, therefore, made a threshold finding at step three that Mr. Upton is disabled.

The ALJ's analysis did not end at this point, however. Instead, the ALJ conducted a second five-step sequential evaluation process, based on her determination that there was medical evidence of substance abuse. *See* 20 C.F.R. § 416.935; *see also Higgins v. Barnhart*, No. 05-2499-JWL, 2006 WL 4045939 at *8 (D. Kan. Oct. 18, 2006) (unpublished op.) ("Because the record contains medical evidence of alcoholism, the ALJ was required to apply the sequential evaluation process again to determine which of plaintiff's physical and mental limitations would remain if plaintiff stopped using alcohol.").

At step two, the ALJ determined Mr. Upton would "continue to have a severe impairment or combination of impairments" even if he stopped "the substance abuse." AR 13. In making this finding, the ALJ noted Mr. Upton's depression, anxiety and panic attacks. *Id.* At step three, the ALJ determined Mr. Upton's impairment or combination of impairments would not meet any listing(s) of impairments if he stopped the substance abuse.

*Id*. Proceeding with the analysis, the ALJ next addressed Mr. Upton's residual functional capacity (RFC). The ALJ determined Mr. Upton could perform a full range of work at all exertional limitations. AR 14. The ALJ determined Mr. Upton's RFC includes the following non-exertional limitations: "can only perform simple repetitive tasks; cannot have contact with the public; cannot perform customer service; has the ability to adapt to a work situation; and is able to relate to co-workers and supervisors for work purposes." *Id*.

At step four, the ALJ determined that if Mr. Upton "stopped the substance use" he would be unable to perform past relevant work as a frame carpenter. AR 17. At step five, the ALJ found that if Mr. Upton stopped the substance use, and considering his age, education, work experience and RFC, a significant number of jobs exist in the national economy that Mr. Upton could perform. *Id*. The ALJ identified kitchen helper, model house keeper and addresser as representative occupations Mr. Upton could perform. AR 18. Accordingly, the ALJ found Mr. Upton not disabled, concluding that Mr. Upton's "substance use disorders is a contributing factor material to the determination of disability." *Id*.

### III. **Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is

3

overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## IV.  Issues Raised on Appeal

Mr. Upton brings two issues on appeal. First, Mr. Upton claims the ALJ's determination that substance abuse is a contributing factor material to Plaintiff's disability is legally erroneous and factually not supported by substantial evidence. Second, Mr. Upton claims the ALJ erred by not giving controlling weight to the opinion(s) of his treating physician(s).

## V.  Analysis

### A.  Whether Alcoholism or Drug Addiction is a Contributing Factor Material to the Disability Decision

As set forth above, the ALJ made a threshold determination that Mr. Upton was disabled at step three of the sequential evaluation process, finding that his impairments met listings 12.04 (Affective Disorder), 12.08 (Personality Disorder) and 12.09 (Substance

Addiction Disorder). The ALJ found the Paragraph A criteria satisfied based on the following:

> [T]he claimant has disturbance of mood accompanied by a full or partial manic or depressive syndrome, as evidenced by a depressive syndrome characterized by anhedonia or pervasive loss of interest, sleep disturbance, decreased energy, feelings of guilt or worthlessness, and thoughts of suicide. The claimant has inflexible and maladaptive personality traits which causes [sic] a significant impairment in social or occupations functioning or subjective distress due to a personality disorder not otherwise specified. The claimant additionally has behavior changes or physical changes associated with the regular use of substances that affect the central nervous system.

AR 12.

With respect to the Paragraph B criteria, the ALJ found marked difficulties in two areas: social functioning; and concentration, persistence or pace. *Id.* Therefore, the ALJ determined the Paragraph B criteria were satisfied. *Id.* And, in making these determinations, the ALJ stated that the claimant was credible in "report[ing] difficulty with concentration, depression, and anxiety resulting in the inability to work." *Id.*[2]

But after making that threshold determination, the ALJ proceeded to make the following findings regarding Mr. Upton's diagnosis of polysubstance dependence:

> It was note [sic] that the claimant denies alcohol and illicit drugs. The claimant has taken Thorazine, Wellbutrin, Klonopin, Buspar and Benadryl (Exhibit 2F, p. 1). Alcohol dependence was noted and the claimant admitted to having drinks about once a month. Dr. Kaczmarek noted that the claimant assaulted a police officer after taking Klonopin and as a result his medications were reduced (Exhibit 1F, p. 27). The claimant's attorney testified at the hearing that the claimant has abused prescription medication and this is current behavior. He further indicated that he believed this was a mild problem and

---

[2]The ALJ made no citation to the record in support of these step three findings.

   not one that causes his mental illnesses. However, the medical records as
   documented by Dr. Kaczmarek would indicate otherwise.

AR 13. Based on these findings, the ALJ proceeded to a second analysis of the five-step sequential evaluation process, this time to determine whether Mr. Upton's "substance abuse" was a contributing factor material to the disability decision. *See* 20 C.F.R. § 416.935.

    **1. <u>Medical Evidence of Drug Addiction or Alcoholism</u>**

  The regulations set forth the analysis to be followed by an ALJ in cases involving drug addiction or alcoholism: "If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." *Id*. As an initial matter, therefore, the record must contain "medical evidence" of drug addiction or alcoholism.

  Here, the medical evidence indicative of drug addiction or alcoholism is limited. The record does include a diagnosis of "History of Poly Substance Dependence" by Dr. Kaczmarek, a treating psychiatrist. *See, e.g.*, AR 149; *see also* AR 177 (assessment at Hope Community Services). But there is no discussion in the medical record by Dr. Kaczmarek or any other medical provider making this diagnosis identifying specific substances abused.

  The record contains statements by Mr. Upton that he does not abuse alcohol, though he does have a drink once or twice a month. *See, e.g.*, AR 184, 191. Mr. Upton's own statements, however, even where reported to a medical provider, do not constitute medical evidence that he suffers from alcohol addiction or abuse. *Compare Epps v. Astrue*, No. CV-07-284-CI, 2008 WL 4587289 at *6 (E.D. Wash. Oct. 10, 2008) (unpublished op.)

(physician's narrative reporting claimant's history of alcohol abuse and fact that claimant had consumed four beers the day of his interview did not equate to medical evidence of alcohol addiction or abuse); *Oettinger v. Barnhart*, No. C.V.A. SA01CA0801OG NN, 2002 WL 31422308 at *6 (W.D. Tex. Sept. 4, 2002) (unpublished op.) (claimant's administrative hearing testimony about current alcohol and drug consumption – one to three beers a day, two to three shots of hard liquor a couple of times a week, and marijuana only once in a while – did not constitute medical evidence of continued use and "d[id] not necessarily establish that plaintiff had an alcohol or drug addiction problem so as to trigger the application of the DAA regulations.").

The Commissioner relies on a Hope Community Services "treatment team" diagnosis of alcohol dependence in September 2007 as medical evidence of substance abuse. *See* Brief in Support of Defendant's Administrative Decision [Doc. # 13] at 6, *citing* AR 182 - 191.[3] However, the ALJ never addressed this diagnosis of alcohol dependence in her discussion of these treatment records. *See* AR 15-16. And, she did not specifically reference the diagnosis of alcohol dependence in her finding that there was medical evidence of substance abuse. *See* AR 13. The Commissioner, therefore, offers only post hoc justifications for the ALJ's decision, and this Court is prohibited from relying upon such post-hoc justifications. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (the decision of the ALJ is "evaluated based solely on the reasons stated in the decision," without engaging in a post-hoc

---

[3]The treatment team diagnosis is not an acceptable medical source, but is relevant as an "other source." *See* 20 C.F.R. §§ 416.913(a) and (d).

effort to salvage it); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) ("[T]he district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.").

A reference to marijuana also appears in the record. Mr. Upton reported that he was arrested for possession of marijuana in 2002. *See, e.g.,* AR 177, 185. But there is no medical evidence that Mr. Upton is addicted to or is dependent upon the use of marijuana. And, the record shows Mr. Upton reported he had not used marijuana since 2002, five years prior to the alleged onset date. AR 191.

That leaves for consideration Mr. Upton's use of prescription medication and specifically, the drug, Klonopin.[4] The evidence relied upon by the ALJ as proof that Mr. Upton *abused* his prescribed Klonopin is speculative at best.

First, the ALJ relied on treatment notes of Dr. Kaczmerak dated November 16, 2005, noting that Mr. Upton exhibited signs of violence when on Klonopin and referencing Mr. Upton's assault of a police officer. AR 13, *citing* AR 172. Dr. Kaczmarek renders no opinion that Mr. Upton's assault was due to an addiction to or abuse of the medication. He does note that Mr. Upton was "conveniently ignoring" side effects of the medication including "irritability of mood." *Id.* Dr. Kaczmarek reviewed with Mr. Upton the risks of Klonopin,

---

[4] It appears the ALJ relied on the alleged abuse of prescription medication as the basis for her finding that the record contained "medical evidence" of drug abuse. Though the ALJ did not expressly identify Klonopin as the drug allegedly abused by Mr. Upton, the focus of the ALJ's finding is this drug. *See* AR 13.

including its potential for addiction, and recommended reducing Klonopin and replacing it with Tegretol. AR 172. The record shows Dr. Kaczmarek reduced the dosage of Klonopin at this time. Subsequent treatment records show Dr. Kaczmarek continued prescribing Klonopin at this reduced dosage. In addition, the record shows the prescribed dosage of other treatment drugs were increased and/or new drugs were utilized for Mr. Upton's mental problems. *See* AR 173, 171, 169, 168, 167, 166, 163, 153, 149.

Second, the ALJ states she relied on "testimony" of Mr. Upton's attorney at the administrative hearing that Mr. Upton "has abused prescription medication and this is current behavior." AR 13. Notably, Mr. Upton did not make an appearance at the administrative hearing. *See* AR 77 (waiver of right to personal appearance). At the hearing, the following exchange occurred between the ALJ and Mr. Upton's attorney:

> ALJ: Okay, do you have any information about his polysubstance abuse?
>
> ATTY: Yes, Your Honor, I do.
>
> ALJ: And that would be?
>
> ATTY: He has used prescription drugs to excess, and the – it's been noted that he uses those drugs. I don't find any, you know, any forged prescriptions or anything. But he does use them to excess. He uses a mixture of them. The record reflects that the – this is a mild problem and that it is not one that is the cause of his mental illness or disability.

AR 30. The attorney does not identify the prescription drugs allegedly used to excess. More importantly, the attorney makes no reference to medical records or other evidence when

9

providing this information to the ALJ. Accordingly, the attorney's statements do not constitute *medical* evidence of substance abuse and cannot serve as substantial evidence to support the ALJ's finding.

Additional evidence in the record references issues related to Mr. Upton's prescribed Klonopin, but this evidence was not discussed by the ALJ as part of her finding of medical evidence of substance abuse. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (holding the "record must demonstrate that the ALJ considered all of the evidence," and the ALJ must "discuss[] the evidence supporting his decision, . . . the uncontroverted evidence he chooses not to rely upon, [and] significantly probative evidence he rejects"). Moreover, the additional evidence does not provide substantial medical evidence to support the ALJ's finding.

First, there is a reference in the record that in May 2005, approximately six months prior to the reference in Dr. Kaczmarek's treatment notes about the assault on the police officer, Dr. Kaczmarek recommended Klonopin be "gradually reduced" in favor of Seroquel for treatment of paranoid ideation. AR 173. In this context, Dr. Kaczmarek noted that Mr. Upton "does admit that he has taken larger doses of [Klonopin] at times, but he is amenable to focusing on the other medications for their therapeutic benefits." *Id*. The notation does *not* include an opinion that Mr. Upton was engaging in drug-seeking behavior with respect to Klonopin or that he suffered from an addiction to Klonopin. Moreover, Dr. Kaczmarek continued Mr. Upton's treatment with Klonopin, indicating Dr. Kaczmarek did not have concerns that Mr. Upton was substantively abusing the Klonopin.

Second, in May 2007, two years following the reference in Dr. Kaczmarek's treatment notes about the assault on the police officer, Dr. Kaczmarek notes the following:

> HISTORY OF PRESENT ILLNESS: Patient's mood, he says, is better, though he continues to have stressors such as no driver's license and inability to make it to this facility in between our visits. He asks therefore that the Klonopin be given in a larger number so he can pick it up once every two months basically.

AR 149. As Dr. Kaczmarek's notes reflect, he did not view Mr. Upton as improperly seeking increased amounts of Klonopin, but rather, requesting a larger refill amount due to social circumstances that made it difficult for him to arrive at the treatment facility. Again, Dr. Kaczmarek continued to prescribe Klonopin.

For reasons not disclosed by the record, it appears Mr. Upton did not continue to see Dr. Kaczmarek after May 2007, as no further treatment notes are provided. Four months later, in September 2007, Mr. Upton received treatment at Hope Community Services. Sue Rollins, an Advanced Practitioner Registered Nurse (APRN), interviewed Mr. Upton and identified his "chief complaint" as follows: "So I could get back on my medication." AR 177. APRN Rollins made the following observation during her examination of Mr. Upton: "He specifically asked for Klonopin and was upset and somewhat defensive when he was told he was not going to be able to obtain the medication here." AR 177.[5] Nurse Rollins' observation about Plaintiff's behavior is not medical evidence of substance abuse, but at best creates a speculative inference about possible abuse. Moreover, although the ALJ referenced

---

[5] As an APRN, nurse Rollins qualifies as an "other source," *see* 20 C.F.R. § 416.913 (d), but not as an "acceptable medical source," *see* 20 C.F.R. § 416.913(a).

11

this notation, *see* AR 16, she did so in the context of summarizing the medical evidence. She did not include this notation in the portion of the decision containing her finding of medical evidence of substance abuse. *See* AR 13. Indeed, it is clear the ALJ limited her analysis of the evidence of substance abuse to the treatment records of Dr. Kaczmarek. *See id.* (referencing attorney's testimony that Mr. Upton had a mild problem but stating that "the medical records *as documented by Dr. Kaczmarek* would indicate otherwise.") (emphasis added).

It appears Plaintiff received no interim treatment between May 2007 – the last treatment records from Dr. Kaczmarek – and August 2007 when he sought treatment at Hope Community Services. As the Commissioner notes, Mr. Upton's condition had worsened during this interim period. The Commissioner attributes Mr. Upton's downward turn to alleged alcohol abuse during this time period. However, when Plaintiff sought treatment at Hope Community Services in August 2007, he reported he was not taking any psychiatric medication. AR 199. Thus, an equally plausible explanation is that Mr. Upton's condition worsened during this time period because he had not been taking his prescribed medications for treatment of his mental impairments. The ALJ must weigh the evidence and make findings to support which of these explanations is more plausible. It is not proper for this Court to do so.

In sum, the evidence relied upon by the ALJ does not constitute *medical* evidence that Mr. Upton *abused* Klonopin or any other substance. The ALJ's initial finding, therefore,

12

triggering the analysis of whether Mr. Upton's substance abuse is a contributing factor material to the determination of disability is not supported by substantial evidence.[6]

## 2. Materiality Determination / Additional Mental Impairments

Even if the limited record set forth above could constitute sufficient medical evidence of alcoholism or drug addiction, the ALJ's decision must be reversed for alternative and additional reasons.

To determine whether alcoholism or drug addiction is a contributing factor material to the determination of disability, the ALJ must determine which of the claimant's physical and mental limitations would remain if the claimant stopped using alcohol or drugs. Then, the ALJ must determine whether the claimant's remaining limitations would be disabling. 20 C.F.R. § 416.935(b)(2).

As set forth, the record shows that in addition to being diagnosed with a history of polysubstance dependence, Mr. Upton was diagnosed with other mental impairments including mood disorder, major depression, anxiety and personality disorder, not otherwise specified. AR 146, 148, 149, 153, 161, 163, 166-169, 171-174, 177, 201, 203. Indeed, as set

---

[6]Furthermore, it appears the diagnosis of history of polysubstance dependence was based on Mr. Upton's *past* history and not on his medical record covering the period under review commencing August 29, 2007. *See, e.g.*, AR 146 (May 15, 2007 treatment records noting past substance abuse); AR 155 (January 9, 2007 treatment records, substance use, sustained remission); AR 163 (January 9, 2007 treatment records, history of polysubstance abuse); AR 164 (noting substance abuse as "special circumstances in childhood"). As noted, the only substance Mr. Upton admitted using during the period under review (other than his prescribed medications) is alcohol, which he claims he consumed approximately once a month. Because the correct legal analysis requires a determination of the effects on a claimant if the claimant *stops using* the substance, the ALJ must necessarily rely upon medical evidence of drug addiction or alcohol abuse during the current period relevant to the disability determination. *See* 20 C.F.R. § 416.935.

forth above, the ALJ initially found Mr. Upton disabled at step three, based on listings 12.04 and 12.08, in addition to listing 12.09. Where, as here, substance abuse is not the only mental condition diagnosed, the determination of whether substance abuse is a contributing factor material to the determination of disability is more complex.

In *Salazar v. Barnhart*, 468 F.3d 615 (10th Cir. 2006), the Tenth Circuit Court of Appeals addressed the "special statutes and regulations governing drug and alcohol cases." *Id*. at 622. The Court noted that the Commissioner sent out a teletype on how to apply these special statutes and regulations. Specifically, the Court noted the teletype "speaks to situations where a claimant has one or more other mental impairments in addition to DAA [drug and alcohol abuse]." *Id*. at 623. The Tenth Circuit observed:

> With regard to the materiality finding, the Commissioner's teletype further directs that where a medical or psychological examiner cannot project what limitations would remain if the claimant stopped using drugs or alcohol, the disability examiner should find that DAA is *not* a contributing factor material to the disability determination.

*Id*. at 623.

In *Salazar*, the physicians treating the claimant never assessed "whether [the claimant's] mental disorders were disabling in the absence of DAA" and, therefore, the Court concluded their opinions "did not rise to the level of substantial evidence" to support the ALJ's materiality finding. *Id*. at 625. Here, the ALJ has cited no medical evidence projecting what limitations would remain if Mr. Upton stopped using drugs or alcohol (assuming the medical evidence could even support a finding that Mr. Upton is currently abusing drugs or

14

alcohol, *see* discussion *supra*). And, the Court's own review of the administrative record shows no such projections included therein.

Accordingly, the ALJ's determination that substance abuse was a contributing factor material to the disability decision is not supported by substantial evidence, requiring a remand. On remand, as an initial matter, the ALJ must identify the *medical* evidence of substance abuse, including the nature of the substance being abused. If the ALJ determines there is substantial medical evidence of substance abuse relevant to the time period under consideration, the ALJ must then determine whether substance abuse is a contributing factor material to the determination of disability. The ALJ must follow the proper analysis as set forth in the Commissioner's teletype instructions. *See Salazar*, *supra*, 468 F.3d at 623-624. In this regard, the ALJ is reminded that where an ALJ is unable to determine from the record whether substance abuse is a contributing factor material to the claimant's disability, the claimant's burden of proof has been met and an award of benefits must follow. *See id*.; *see also Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003) ( "In colloquial terms, on the issue of materiality of [substance abuse], a tie goes to [the claimant].").

B. **Treating Physician Opinion**

As his second claim for relief, Mr. Upton contends the ALJ erred in disregarding the opinion of his treating physician. In support of this claim, Mr. Upton fails to identify the treating physician opinion(s) upon which this claim is based. Nonetheless, in a different section of his brief, Mr. Upton references the opinion of a treating physician, Dr. Haisam Al-

Khouri, dated February 14, 2008. *See* Plaintiff's Opening Brief at 6-7. It appears, therefore, that Mr. Upton's claim is based on Dr. Haisam Al-Khouri's opinion. As the Commissioner properly notes, however, Dr. Haisam Al-Khouri's February 14, 2008 report is not part of the administrative record and, therefore, is not properly before this Court for consideration. Because Plaintiff fails to identify with particularity any other treating physician opinion in support of this claim, the claim should be denied.[7]

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further consideration consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. § 636 and Fed.R.Civ.P.72. Any such objections should be filed with the Clerk of the District Court by March  23rd , 2011. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

---

[7]To the extent the opinion of Dr. Haisam Al-Khouri is material to the disability determination, on remand, the parties should consider making Dr. Al-Khouri's opinion part of the record so that the Commissioner may properly consider it in making the disability determination.

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this   2nd   day of March, 2011.

*[signature: Valerie K. Couch]*

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE